United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TIMOTHY PEOPLES,

Defendant.

Case No. 19-cr-00226-RS-13

**ORDER DENYING MOTION TO SUPPRESS**

I. INTRODUCTION

Timothy Peoples moves to suppress evidence seized during a search of a certain residential property in Antioch, California. The affidavit submitted to obtain the search warrant listed that address as Target Premises #3, and described it as the "Residence of Timothy Peoples." By his own account, Peoples was sleeping with his young son's mother and the child in the front room of the house when officers executed the search warrant. Peoples contends, however, that the house was not his "residence," or at least that the DEA lacked a reasonable basis to describe it as such in the affidavit supporting the warrant. Peoples also argues the officers conducting the search acted unreasonably in violation of his rights and those of others present in the house. Peoples urges that at a minimum, an evidentiary hearing is warranted under *Franks v. Delaware*, 438 U.S. 154 (1978), as to whether evidence seized in the search should be suppressed. Because Peoples has not shown there is a basis to exclude the evidence or that an evidentiary hearing is warranted, the motion will be denied.

II. LEGAL STANDARDS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue but upon probable cause." U.S. Const. Amend. IV. Evidence seized in violation of the Fourth Amendment, including any "fruit of the poisonous tree," may be excluded in a criminal proceeding against the victim of the illegal search and seizure. *Wong Sun v. United States,* 371 U.S. 471, 487 (1963). That said, the exclusionary rule should be applied only where it will effectively deter law enforcement misconduct. *Davis v. United States*, 564 U.S. 229, 237 (2011).

The motion here challenges the accuracy and sufficiency of the affidavit the government submitted to obtain a search warrant. "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, *supra*, 438 U.S. at 171. The *Franks* court further explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id. Franks* also cautioned that, "[a]llegations of negligence or innocent mistake are insufficient." *Id.* Finally, *Franks* held that:

> if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171-72.

III. DISCUSSION

A. Alleged misrepresentations in the affidavit

The primary argument in Peoples' moving papers is the DEA's interception of a telephone call on May 21, 2018, was illegal because the wiretap authorization purportedly expired the preceding day. Peoples argued that but for that intercept, and subsequent surveillance he contends was its direct fruit, the DEA would not have been able to assert that Target Premises #3 was his residence. Peoples argued the search warrant was obtained by a knowingly false statement in the affidavit—i.e., that the phone call had been lawfully intercepted.

The government responds that the order tracked the language of the wiretap statute, *see* 18 U.S.C. § 2518(5), and provided the 30-day period was to be "measured from the earlier of the day on which law enforcement offices [sic] first begin to conduct an interception under the requested Order or ten (10) days after the Order is entered." *See* Dkt. No. 429-3, 5:3-8. The government then points to a "report of investigation" from May of 2018 which states:

> The Court signed the Order on Friday, April 20, 2018, at approximately 10:00 a.m. The Drug Enforcement Administration (DEA) transmitted the Order . . . to AT&T, the telephone service provider for Target Telephone 2, on April 23, 2018 . . . . On April 23, 2018, AT&T provisioned Target Telephone 2. Monitoring . . . did not commence until approximately 10:00 a.m. on April 23, 2018 . . . . The first interception commenced at approximately 11:56 a.m.

See Dkt. No. 439-1, 3:14-20.

Measured from when the surveillance began, the order did not expire until at least May 23, 2023. On reply, Peoples concedes this point, and withdraws his argument that the intercept was illegal, apologizing for having presented it in error.

Peoples still argues, however, that the affidavit presented to justify the search of "Target Premises #3" knowingly omitted *other* material information undermining the reliability of its description of Target Premises #3 as being his "residence." Specifically, Peoples complains the affidavit failed to disclose that (1) three months earlier, co-defendant Lee was surveilled entering and exiting a residence next door to Target Premises #3 following a suspected drug call, (2)

Peoples' driver's license does not list Target Premises #3 as his residence, and (3) a background report obtained by a private investigator from a TransUnion database includes no indication that Peoples resided at Target Premises #3.

The affidavit submitted in support of the warrant, however, sets out an adequate basis for believing that Peoples resided at Target Premises #3, including surveillance of him there, law force database queries showing the address to be associated with his suspected girlfriend, social media posting supporting the existence of a relationship between Peoples and the suspected girlfriend, location information associated with one of the tapped phones, and physical surveillance of co-defendants making suspected narcotics deliveries to Peoples at that location. Peoples' contentions that the affidavit lacked sufficient details regarding the instances of surveillance and the phone location information was potentially misleading given evidence of narcotics activity at residence next door, are not persuasive. While Target Premises #3 may not have been Peoples' official or only residence, for purposes of obtaining a search warrant, there were sufficient grounds to allege he resided and appeared to receive narcotics there. The facts Peoples contends were omitted were not material and would not have defeated probable cause. No basis for an evidentiary hearing appears. *See Franks*, 438 U.S. at 17-72.

B. <u>Conduct during execution of the warrant</u>

The suppression motion also argues the search was carried out in an unreasonable manner. Peoples claims the door was breached with a battering ram prior to any knock, and that the house's occupants were subjected to unreasonable mistreatment. Although factual disputes exist as to those allegations, the government is willing to presume, for purposes of argument, that the officers conducting the search acted as Peoples contends, and that the conduct of the officers may have been unlawful.

Even assuming at least some of the officers' conduct violated the Constitutional rights of Peoples and/or other occupants of the house, Peoples has shown no causal link between any such violations and the seizure of the evidence. *See United States v. Ankeny*, 502 F.3d 829, 837 (9th

Cir. 2007) ("The alleged Fourth Amendment violation and the discovery of the evidence lack the causal nexus that is required to invoke the exclusionary rule.").

Finally, Peoples claims there is a factual dispute regarding the precise circumstances of the discovery of cocaine on the premises, and he suggests photographs reproduced in the government's opposition brief showing cocaine in plain view may have been staged. Peoples also implies the involvement in the search of officers from the Antioch Police Department, including some who may be the subject of current allegations of wrongdoing in that department, warrants further scrutiny. Peoples' briefing stopped short of arguing there is evidence to support a finding that the evidence was planted. At the hearing, however, Peoples more strongly urged that he should be permitted to explore that possibility in a *Franks* hearing.

At least at this juncture, Peoples has offered nothing but conjecture to suggest the evidence from the search was somehow planted by law enforcement or that it otherwise should excluded, or that there are grounds for an evidentiary hearing. Although Peoples remains free to proffer evidence and argument at trial that the evidence seized in the search may have been planted, the motion for a *Franks* hearing and the underlying request that the evidence be suppressed is denied.

**IT IS SO ORDERED**.

Dated: August 16, 2023

RICHARD SEEBORG
Chief United States District Judge